MELVIN J. DURAN, Judge Pro Tem.
(dissenting with written reasons).
I respectfully dissent from the opinion of the majority in this case, for the following reasons:
(1) This record establishes that the plaintiff lost a hand in an industrial accident. There is no doubt in my mind that the plaintiff, a machine operator who suffered traumatic amputation of one of his hands, is, under workmen’s compensation laws, totally and permanently disabled. Therefore, the man is entitled to 500 weeks of compensation.
(2) We have in the record before us evidence that not on one but on several occasions, the defendant’s offer to settle the case for $3,500.00 was refused by plaintiff’s counsel. The only other evidence to the contrary is the uncorroborated testimony of the defendant’s claims adjuster. He testified that in a telephone conversation with plaintiff’s attorney, the latter demanded a total permanent disability payoff figure which could be settled and compromised for $6,000.00. He was advised by the adjuster that his figure of $6,000.00 was considered too high, and that $3,500.00 would be a proper amount. Such evidence does not convince me that these parties agreed to settle for $3,500.00. With payment of this $3,500.00, the injured man received a total of some $9,300.00 in benefits; he is by law entitled to $17,500.00.
(3) A copy of the $3,500.00 draft is in evidence. It was dated March 17, 1969. In one of the “fill-in-the-blank” spaces on that draft, there is typed “X” opposite the word final. But then typed across the face of that draft was the notation “100 weeks comp at $35.00.”
The claims adjuster testified that the “100 weeks at $35.00” notation was really nothing more than an internal accounting procedure for company purposes and was not intended to indicate payment in advance (which would have been against company policy). The majority accepts this self-serving interpretation as gospel, while at the same time it holds that the less conspicuous “X” is final, to be conclusively binding on the plaintiff. I cannot subscribe to such rationalization. This insurance company, routinely in the business of issuing the claimants workmen’s compensation checks or drafts, can and must find a better way of handling their internal accounting than by putting their information for their exclusive use on the only document (check) they give to a claimant. Besides, I subscribe to the proposition that the specially typed notation “100 weeks comp at $35.00” takes precedence over the filled-in blank “X” opposite the printed form “final.”
(4) If the defendant’s claims adjuster is correct when he says this $3,500.00 draft was in full and final settlement, then I must ask: Where is the usual and customary signed release that always accompanies settlement agreements? There is none in the record. I cannot conceive of this thoroughly experienced compensation carrier ultimately and completely closing its file in this case with such a flimsy and shoddy procedure of merely issuing a draft.
(5) A fortiori, I must ask: Where in the record) is the compliance with the law requiring that all workmen’s compensation settlements be by and with judicial approval? R.S. 23:1271. There is no evidence of any such court-sanctioned approval in this case.
(6) As a district (trial) court judge, sitting here pro tempore, I am asked almost daily to approve compensation settlements. This is not the first instance in which I have encountered this “advance-payment *737 prescription” situation. I look with alarm upon it and strongly suggest that if we do not “nip it in the bud” we should not allow it to proceed to full bloom.
This insurance company gave this plaintiff advance payment of 100 weeks compensation, having every reason to believe at the time that the claimant was entitled to a total of 500 weeks compensation. The procedure is commendable and is to be encouraged, not condemned (although the evidence here is that this company did not intend to be benevolent, since it was against its policy to pay in advance). Had this plaintiff sued for total permanent compensation twenty-five weeks after he received the 100-week advance, he would then have been faced with the defense of prematurity, and with the expenditure of court costs being wasted when his case was dismissed. Instead, suppose he waited until the expiration of the 100-week advance period and is now faced with the defense of prescription. Heads, he doesn’t win; tails, he loses!!! No injured workman, entitled to compensation benefits, should be placed into such a precarious position, from which he cannot extricate himself.
(7) The majority concludes that this is not a case in which this court is called upon to decide if a workmen’s compensation settlement was legally or validly entered into without judicial approval. Rather, it is argued that this is a case in which we have before us nothing more than an exception of prescription, which they say is purely a question of fact. I simply cannot subscribe to either proposition.
Whether prescription has barred this claim for compensation is a mixed question of both fact and law. By law, we must determine when prescription began to run. Thereafter, it is a question of fact as to whether enough time has transpired to bar the claim. Prescription (one year following date of last payment) did not begin to run in this case until the date of expiration of the 100 weeks for which advance payment was made. It did not begin to run on March 17, 1969, the date on which the injured workman was handed the draft. .
It is further argued that the only evidence we have is the testimony of the claims adjuster who said this was a final payment (the plaintiff having submitted no testimony at all). I cannot agree with this proposition either, because we do have the evidence in the form of the draft itself and the pleadings.
The reasoning of the majority is exactly the same as if this insurance carrier had told the plaintiff on March 17, 1969 “we are cutting you off and refuse to pay you any more compensation from this date forward.” The only way in which we can legally conclude that prescription began to run on March 17, 1969 is for us to give full faith and credit to the alleged settlement. We must close our eyes to the admitted fact that there was no valid settlement made, that there has never been obtained a judicial approval of that settlement. If it was illegal and wrong to settle a compensation case that way, then it is just as illegal and just as wrong for us to say that the event started the tolling of prescription. I am astounded. The majority is, in fact, saying: “By law, we know that the event is illegal and cannot be recognized — BUT—we say it happened on March 17, 1969 anyway.” To put it anotb= er way, in effect, the majority is telling two people: your marriage of March 17, 1969 is patently' and obviously bigamous and illegal and hence never was legally' contracted. BUT happy fourth anniversary !!! I am not trying here to be overly critical of colleagues for whom I have profound respect. I am just trying to emphasize that they are reckoning from a point in time which the law says positively never occurred.
I hold firmly to the proposition that when an insurance company makes an advance payment of compensation the prescriptive period of one year from date of last payment does not begin to run until the advance payment period expires. To *738 hold otherwise would be to open further the door for insurance companies to make advance payments sufficient to carry them beyond the one-year prescriptive period from date of payment and to avoid the rest of their liability on the grounds of prescription. In cases of total permanent disability, the advance payment could be made for 52 weeks compensation and thus escape payment for the remaining 448 weeks. I know this was not the purpose of the compensation statute.